IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REUBEN & KATHARINE TOLENTINO; KB PROPERTIES, LLC; JAMES & BRENDA HALL; HARPAUL & AMRITPAL NAGRA; WEST MULLEN IOWA, LLC; M & B REAL PROPERTIES, LLC; RIVER WIND, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>JEFFREY A. MOSSMAN; SCOTT G. MUELLER; DENNIS DUDLEY; INVESTORS ADVANTAGE CAPITAL FUND I, LLC; CASH FLOW FINANCIAL GROUP, LLC; GREATER CEDAR VALLEY FINANCIAL GROUP, LLC; GREATER CEDAR VALLEY FINANCIAL GROUP II, LLC; EAGLES NEST REAL ESTATE, LLC; BRO PROPERTY AND APPRAISALS, LLC; McRAE APPRAISALS, INC.; VALUATION SERVICES, INC.; MICHAEL FELTNER; and GARY DECLARK,<br><br>    Defendants. | 2:07-CV-1243-GEB-DAD<br><br>ORDER[*] |

Defendants move to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to

---

[*] This matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

1

state a claim upon which relief may be granted, and improper venue. In the alternative, Defendants move to transfer venue to Iowa for the convenience of the parties.

## THE PARTIES

Plaintiffs allege in their Complaint that Defendants engaged in various types of fraud by conspiring to sell Plaintiffs investment properties in Iowa. Plaintiffs Reuben and Katherine Tolentino, James and Brenda Hall, and Harpaul and Amritpal Nagra, are California residents. Plaintiffs KB Properties LLC, West Mullen Iowa LLC, M & B Properties LLC, are Iowa limited liability companies whose members include Dean and Kara Baker, who are California residents. Plaintiff River Wind LLC is a Delaware limited liability company whose sole member is Sarah Crawford, who is a Hawaii resident.

Defendants Investors Advantage Capital Fund I LLC ("Investors Advantage"), Cash Flow Financial Group LLC ("Cash Flow"), Greater Cedar Valley Financial Group I LLC ("Cedar Valley I") Greater Cedar Valley Financial Group II LLC ("Cedar Valley II"), and Eagles Nest Real Estate LLC ("Eagles Nest") are Iowa limited liability companies. Defendants Jeffrey Mossman ("Mossman"), Scott Mueller ("Mueller"), and Dennis Dudley ("Dudley") are Iowa residents. Mossman and Mueller are the owners, principals, agents and managers of Investors Advantage, Cash Flow, Cedar Valley I, Cedar Valley II, and Eagles Nest. (Compl. ¶¶ 13-15.) Dudley is an advisor who worked with and for Mossman and Mueller. (Id. ¶ 16.) (Collectively, these Defendants will be referred to as the "Promoter Defendants.")

Defendants Bro Property and Appraisals LLC, an Iowa limited liability company; McRae Appraisals, Inc., an Iowa corporation; Valuation Services, Inc., an Iowa corporation; Michael Feltner, an

Iowa resident; and Gary DeClark, an Iowa resident, will be referred to collectively as the "Defendant Appraisers." ("Defendants" will refer to all Defendants collectively.)

## PLAINTIFFS' FACTUAL ALLEGATIONS

In December 2004, Mossman and Mueller promoted Iowa residential real estate investment "packages" (hereinafter, "real estate packages") to attendees at a seminar in Hawaii. (Compl. ¶ 27.) Plaintiffs Dean Baker, Kara Baker, Sarah Crawford, Reuben Tolentino, and James Hall were present at the seminar. (Id.) Mossman and Mueller stated that the properties were "turn key," with tenants and management already in place. (Id.) They stated that the properties had generated profits for the past several years. (Id. ¶ 28.) Mossman and Mueller also offered management services "for a fee" after the properties were purchased, through their own management company, Nest Egg Management ("Nest Egg").[1] (Id. ¶ 29.)

Mossman and Mueller presented written materials at the seminar that made representations about the properties, including: (1) "no hidden costs - we'll place tenants, collect rents, do evictions, order repairs, and pay bills - this investment cash flows from day one"; (2) "sleep well knowing that your investment is maintained by Management Systems, not people"; (3) "distributed risk over multiple properties"; (4) "no hassle management"; (5) "automatic monthly payments deposited in your bank account." (Id. ¶ 30.)

Mossman and Mueller also made oral representations to Plaintiffs regarding the real estate packages, including: (1) Mossman

---

[1] Plaintiffs allege that Nest Egg Management was an Iowa corporation formed in 2002 and dissolved on Aug. 1, 2006. (Id. ¶ 15.) Plaintiffs allege that Mossman and Mueller were principals and officers of Nest Egg Management. (Id.)

3

and Mueller had owned the properties for one or two years as their own investment; (2) Mossman and Mueller had personally rehabilitated all of the properties, so each was livable and safe; and (3) the properties were rented to qualified tenants and would produce positive cash flow. (Id. ¶ 31.) The Promoter Defendants each "had full knowledge of, and took part in and substantially assisted in, promoting the investment packages and in making the representations and providing the financial projections to Plaintiffs." (Id. ¶ 35.)

As a result of representations and "promotional activities" by the Promoter Defendants, Plaintiffs purchased a number of properties as part of the real estate packages. (Id. ¶ 33.) For example, the Plaintiffs Reuben and Katharine Tolentino purchased package number four, consisting of seven Iowa residential properties, for $544,000. (Id.) Each Plaintiff purchased a different real estate package, with some packages containing up to 25 properties. (Id.)

Plaintiffs allege that "[u]nder the management of Nest Egg Management,"[2] the properties did not perform as well as the Promoter Defendants had promised. (Id. ¶ 36.) Plaintiffs learned by monthly reports that the properties were in need of substantial repairs, some were uninhabitable or beyond repair, and several properties (that the Promoter Defendants had represented were occupied) were actually vacant. (Id.) Nevertheless, the Promoter Defendants continued to assure Plaintiffs that the projected returns were certain and that Plaintiffs should not become "over-involved" in management of the properties. (Id. ¶ 37.)

---

[2] While Plaintiffs do not state specifically that each Plaintiff hired Nest Egg to manage the newly purchased real estate package, it is reasonably inferred from the rest of the allegations. (See Compl. ¶¶ 36, 38.)

4

Plaintiffs allege that the Promoter Defendants, acting through Nest Egg, embezzled funds belonging to Plaintiffs by failing to deposit rents, turn over tenant lease deposits, or provide receipts for expenses said to be paid on the properties. (Id. ¶ 38.)

Plaintiffs further allege that prior to selling the real estate packages to Plaintiffs, Defendants engaged in conduct that artificially made the properties appear more valuable. (Id. ¶¶ 39-41.)

First, Mossman, Mueller and Dudley periodically transferred the properties among themselves and their business entities, including Investors Advantage, Cash Flow, Cedar Valley I, Cedar Valley II and Eagles Nest, each time raising the price.[3] (Id. ¶ 39.) The intended effect was to artificially inflate the appearance of value of the properties in order to mislead buyers. (Id. ¶¶ 39-40)

Second, Plaintiffs allege that the Defendant Appraisers conducted "fraudulent appraisals" in conspiracy with the Promoter Defendants in order to appraise the properties at more than their value. (Id. ¶ 41.) Plaintiffs allege that the Defendant Appraisers conducted a variety of fraudulent appraisals, including (1) obtaining values of the properties directly from the Promoter Defendants; (2) performing "drive-by" appraisals; (3) relying on previous appraisals of properties at artificially inflated prices; (4) using other of Defendants' over-valued properties as "comparables"; (5) intentionally manipulating the appraisals to match the Promoter Defendants' quoted

---

[3] These transactions were first uncovered by another investor, Bobby Edwards, who had also attended the 2004 Hawaii seminar and bought package number 1. (Compl. ¶ 39) Plaintiffs subsequently investigated the public records for their own real estate packages and discovered the pattern of transfers. (Id. ¶ 40.)

sales price. (Id.) Plaintiffs relied on these appraisals when deciding to invest in the real estate packages. (Id.)

Plaintiffs assert two federal claims as the basis for federal question jurisdiction (Id. ¶ 24.): securities fraud against the Promoter Defendants under 15 U.S.C. § 78j(b) (Count 1), and conspiracy to defraud against all Defendants under 15 U.S.C. § 77q(a) (Count 2). Plaintiffs also assert securities fraud claims under California and Hawaii law (Counts 9, 10, 11, 14, and 15), as well as claims for breach of fiduciary duty and conspiracy to breach fiduciary duty (Count 3), aiding and abetting breach of fiduciary duty (Count 4), negligent misrepresentation (Count 5), fraud and conspiracy to commit fraud (Count 6), aiding and abetting fraud (Count 7), constructive fraud (Count 8), and violations of California Business and Professions Code sections 17200 and 17500 (Counts 12 and 13).

## DISCUSSION

I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants argue that there is no federal question subject matter jurisdiction because Plaintiffs' federal securities law claims are not viable, since the transactions between Plaintiffs and Defendants did not involve "securities" within the meaning of the federal statutes under which jurisdiction is asserted. (Mossman, et al., Not. of Mot. and Mot. to Dismiss ("Mossman Mot.") at 19; 9:3-13:26.) When, as here, the dismissal motion seeks decision on the merits of whether a federal claim has been alleged, the dismissal issue reached is whether the alleged claim survives the dismissal motion under Federal Rule of Civil Procedure 12(b)(6).[4] See Smith v.

---

[4] All subsequent references to "Rules" are to the Federal Rules of Civil Procedure.

Gross, 604 F.2d 639, 641 (9th Cir. 1979) (per curiam) (holding that "the dismissal of an action for failure to show that a 'security' is involved is addressed to the merits" of the claim and, thus, the dismissal was for "failure to state a claim rather than [for] lack of subject matter jurisdiction").

II. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants seek dismissal of Plaintiffs' Complaint for lack of personal jurisdiction, arguing that Defendants do not have sufficient contacts with California. (Mossman Mot. at 19:12-24:15.) However, "so long as a defendant has minimum contacts with the United States, [15 U.S.C. § 77aa] confers personal jurisdiction over the defendant in any federal district court" since Plaintiffs allege federal securities fraud claims. Sec. Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1316 (9th Cir. 1985). Defendants argue that there is no personal jurisdiction under § 77aa because Plaintiffs' federal securities fraud claims are not viable. (Mossman Mot. at 19:15-18.) However, § 78aa provides personal jurisdiction over Defendants even if Plaintiffs' federal securities fraud claims are dismissed without prejudice under Rule 12(b)(6). See Poindexter v. Wedbush, Noble, Cooke, Inc., 1983 WL 1279, at *3 (D. Or. Jan. 24, 1983) (holding that dismissal of federal securities law claims under Rule 12(b)(6) "does not alter the fact that the court has personal jurisdiction over defendant [under § 78aa]"). Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is denied.

///
///
///
///

III. Motion to Dismiss for Failure to State a Claim[5]

    A. Plaintiffs' Federal Securities Fraud Claims

        Defendants argue Plaintiffs' federal claims should be dismissed under Rule 12(b)(6) because the facts in the Complaint do not demonstrate that the real estate packages Plaintiffs bought from Defendants were securities. (Mossman Mot. at 9:3-13:26.)

        To state a federal claim under either 15 U.S.C. § 78j(b) or 15 U.S.C. § 77q(a), Plaintiffs must allege a transaction involving the purchase or sale of a "security." See De Luz Ranchos Inv., Ltd. v. Coldwell Banker & Co., 608 F.2d 1297, 1301 (9th Cir. 1979). The definition of "security" "embodies a flexible rather than a static principle," and may include "investment contracts." SEC v. W.J. Howey Co., 328 U.S. 293, 298-99 (1946).

        Defendants argue that the real estate packages that Plaintiffs purchased from the Promoter Defendants were not securities because the real estate packages do not meet the three-prong Howey test for investment contracts: "(1) an investment of money, (2) in a common enterprise, (3) with an expectation of profits produced by the efforts of others." Hocking v. Dubois, 885 F.2d 1449, 1455 (9th Cir. 1989), citing Howey, 328 U.S. 293. A common enterprise requires the presence of either vertical or horizontal commonality.[6] SEC v. R.G. Reynolds Enters., Inc., 952 F.2d 1125, 1130 (9th Cir. 1991). Vertical commonality exists where "the fortunes of the investors are linked

---

[5] The Rule 12(b)(6) dismissal standard is well-known and need not be repeated here.

[6] The parties do not address horizontal commonality in their briefs and Plaintiffs do not allege it to exist in the Complaint. Horizontal commonality exists where a group of investors pool their interests, "mak[ing] their collective fortunes dependant on the success of a single common enterprise." Hocking, 885 F.2d at 1459.

with those of the promoters." See <u>SEC v. Goldfield Deep Mines Co. of Nevada</u>, 758 F.2d 459, 463 (9th Cir. 1985). Defendants argue that the facts alleged in the Complaint do not demonstrate vertical commonality between Plaintiffs and the Promoter Defendants, since "there is no allegation that any [] Defendant stood to realize any post-sale economic benefit from the success of the enterprise . . . ." (Mossman Mot. at 11:9-10.)

Plaintiffs counter that the Promoter Defendants, through Nest Egg Management's post-sale management of the properties, "had a substantial financial interest in the post-sale success or failure of the venture." (Pls.' Opp'n to Defs. Mossman, et al. Mot. to Dismiss ("Pls.' Opp'n to Mossman Mot.") at 9:22-23.) However, Plaintiffs admit that "[t]he Complaint does not specify the manner in which Nest Egg's fee is to be calculated."[7] (<u>Id.</u> at 10 n.5.) Since Plaintiffs' allegations do not demonstrate that Defendants' profits were dependent on the future success of the real estate packages, the allegations are insufficient to demonstrate vertical commonality. See <u>Brodt v. Bache & Co.</u>, 595 F.2d 459, 461 (9th Cir. 1978) (finding no vertical commonality existed because the success or failure of the promoter did not "correlate with individual investor profit or loss," but rather the promoter "could reap large commissions for itself and be characterized as successful, while the individual [investments] could be wiped out"); cf. <u>Reynolds</u>, 952 F.2d at 1131 (finding vertical

---

[7] The service contracts between Nest Egg and each Plaintiff are attached to Defendants' reply brief. (<u>See</u> Decl. Jeffrey Mossman in Supp. of Defs.' Mot. to Dismiss, Exs. B-8, B-9, B-10, C-6, D-3, & E-3.) However, in ruling on Rule 12(b)(6) motion, only "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" may be considered. <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003). Therefore, the contents of these documents is not considered.

1 commonality existed because the promoter earned a management fee based
2 on a percentage of the investors' profits, "thus making his own profit
3 contingent on the profit of his investors").

4     Plaintiffs argue in their opposition to Defendants' motion
5 that "Nest Egg's fee for the provision of such management services was
6 calculated as a percentage of the rental income generated by the
7 properties." (Pls.' Opp'n to Mossman Mot. at 10:3-4.)  But "new
8 allegations contained in [an] opposition [to a] motion [] are
9 irrelevant for Rule 12(b)(6) purposes." Schneider v. Cal. Dep't of
10 Corrs., 151 F.3d 1194, 1197 (9th Cir. 1998).

11     Since Plaintiffs' allegations are insufficient to allege
12 securities under federal law, Defendants' motion to dismiss
13 Plaintiffs' federal claims under Rule 12(b)(6) is granted.

14     B. Plaintiffs' State Law Securities Claims

15     Plaintiffs' California securities law claims also
16 require the presence of a security as defined by the Howey test. See
17 People v. Coster, 151 Cal. App. 3d 1188, 1193 (1984) ("For the purpose
18 of both the federal and the California securities law, an investment
19 contract means a contract or transaction whereby a person invests
20 money in a common enterprise with the expectation of deriving a profit
21 solely from the efforts of a promoter or a third person." (citing
22 Howey, 328 U.S. at 298-99)); Moreland v. Dep't of Corps., 194 Cal.
23 App. 3d 506, 513, 518-19 (1987) (holding that investment was not
24 security under California law by applying the Howey test).  Since
25 Plaintiffs' allegations do not demonstrate the existence of a
26 security, Counts 9, 10, and 11 are dismissed.

27     Since River Wind's claims will be dismissed, infra, for
28 improper venue, the issue whether or not River Wind's security claims

alleged under Hawaii should be dismissed under Rule 12(b)(6) need not be reached.

### C. Plaintiffs' State Law Fraud Claims

Defendants seek dismissal of Plaintiffs' state law fraud claims under Rule 12(b)(6), arguing that Plaintiffs fail to plead these claims with the particularity required by Rule 9(b). (Mossman Mot. at 15:14-16:6.) "Rule 9(b) requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer . . . [and that] [t]he pleader . . . state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Odom v. Microsoft Corp., 486 F.3d 541, 553-54 (9th Cir. 2007) (internal citations and quotations omitted).

Plaintiffs' fraud claims against Mossman and Mueller are pled with sufficient particularity, since Plaintiffs identify specific statements that Mossman and Mueller made to Plaintiffs in December 2004 at the Hawaii real estate seminar. (See Compl. ¶¶ 27-31.)

However, Plaintiffs' allegations in the Complaint do not specify any fraudulent statements made by Dudley, Investors Advantage, Cash Flow, Cedar Valley I, Cedar Valley II, Eagles Nest, or any individual Defendant Appraiser. Plaintiffs allege that following the December 2004 real estate seminar, Dudley "assist[ed]" Mossman and Mueller as they "continued to promote their real estate investment packages." (Compl. ¶ 32.) Plaintiffs also allege that "Plaintiffs investigated the public records for their own properties and discovered [a] pattern of fraud, which Plaintiffs are informed and believe was done by Defendants." (Id. ¶ 40.) Plaintiffs allege that the Defendant Appraisers "were aware of the scheme of [the Promoter

11

Defendants] to defraud Plaintiffs . . . [and] provided substantial assistance" by performing a list of acts, including intentionally manipulating appraisals of the properties in the real estate packages to make them appear more valuable. (Id. ¶ 41.)  However, Plaintiffs do not specify when Dudley, Investors Advantage, Cash Flow, Cedar Valley I, Cedar Valley II, Eagles Nest, or the Defendant Appraisers made any fraudulent statements or what those statements were.  Fraud allegations are not stated with particularity if the allegations "indiscriminately group[] all of the individual defendants into one wrongdoing monolith. . . .  Fraud allegations may not rely on blanket references to conduct of 'defendants and each of them,' but must instead inform each defendant of the conduct which constitutes the alleged violation." Lubin v. Sybedon Corp., 688 F. Supp. 1425, 1443 (S.D. Cal. 1988).  Accordingly, Defendants' motion to dismiss Plaintiffs' state fraud claims (Counts 6, 7 and 8) against Dudley, Investors Advantage, Cash Flow, Cedar Valley I, Cedar Valley II, Eagles Nest, and the Defendant Appraisers is granted.[8]

D. Plaintiffs' Negligent Misrepresentation Claim

Defendant Appraisers seek dismissal of Plaintiffs' negligent misrepresentation claim, arguing that Plaintiffs do not allege facts showing reliance on a misrepresentation made by Defendant Appraisers. (Bro, et. al's Mot. to Dismiss at 13.)  See B.L.M. v. Sabo & Deitsch, 55 Cal. App. 4th 823, 834 (1997) ("The elements of negligent misrepresentation . . . include justifiable reliance on the

---

[8] Although Defendants also argue Plaintiffs' negligent misrepresentation claim fails to comply with Rule 9(b), that claim is not subject to that particularity pleading requirement.  See Premium Capital Funding, LLC v. AR Home Loans, Inc., 2007 WL 2904017, at *2 (E.D. Cal. Oct. 2, 2007).

12

representation . . .").  However, Plaintiffs allege that the Defendant Appraisers conducted "fraudulent" appraisals of the properties in the real estate packages, and that Plaintiffs "relied on these appraisals to invest in the investment packages with Defendants."  (Compl. ¶ 41.) These allegations are sufficient.  Therefore, this portion of the motion is denied.

IV. Venue

A. Motion to Dismiss for Improper Venue

Defendants seek dismissal of Plaintiffs' Complaint under 28 U.S.C. § 1406(a), arguing that venue is improper in the Eastern District of California.  (Mossman Mot. at 25:20-27:9.)  Plaintiffs counter that venue is proper under 15 U.S.C. § 78aa, which provides venue is proper, inter alia, "in the district wherein any act or transaction constituting the [federal securities fraud] violation occurred."  Sec. Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1316 (9th Cir. 1985) (rev'd on other grounds, 503 U.S. 258 (1992)). Plaintiff James Hall avers that Mossman made several communications to him promoting the real estate packages while Hall was in the Eastern District of California.  (See Declaration of James Hall in Opp'n to Def.'s Mot. to Dismiss at ¶¶ 2, 4-5, 8-9.)  Mossman's communications to Hall constitute an "act or transaction" in the Eastern District of California.  See Bourassa v. Desrochers, 938 F.2d 1056, 1057 (9th Cir. 1991) (holding that a defendant's single phone call was an "act or transaction" sufficient to provide for venue under § 78aa).  Under the "co-conspirator venue theory," Mossman's "act or transaction" in the Eastern District of California makes this venue proper for all Defendants since Plaintiffs allege that Defendants engaged in a conspiracy to commit securities fraud.  See Vigman, 764 F.2d at 1317

(holding that one defendant's act in venue made venue proper for all defendants since plaintiffs alleged a conspiracy to commit securities fraud).  Accordingly, Defendants motion on this ground is denied.

Defendants further argue that venue is only proper in the District of Iowa because of forum selection clauses in the management services contracts between each Plaintiff and Nest Egg Management. (Id. at 24:20-25:17.)  Each forum selection clause in these contracts states: "The parties hereto stipulate to venue in a court of competent jurisdiction in Black Hawk County, Iowa except for issues that require action where the property is located."  (Mossman Decl., Exhs. A-4, B-8, B-9, B-10, C-6, D-1, D-2, and E-3.)

Plaintiffs disagree, arguing that notwithstanding use of the word "stipulate," the venue clauses are "permissive and do[] not limit the venues in which a party may bring an action."  (Pls.' Opp'n to Mossman Mot. at 23:8-9.)  Thus, at issue here is to what the parties stipulated in the management services contract.  But it is unclear whether by stipulating to venue in Iowa the parties "clearly agreed" to forgo any other venue.  See Bentley v. Mutual Benefits Corp., 237 F. Supp. 2d 699, 702-03 (S.D. Miss. 2002) (holding that parties who "stipulated" to certain venue "merely . . . agreed to . . . [that] venue, without excluding all other venues").  Since Defendants have not shown that the clauses at issue clearly require exclusive jurisdiction in Iowa, their motion is denied.

Defendants also argue that River Wind's claims should be dismissed for improper venue because the forum selection clause in the real estate purchase contract between River Wind and Cedar Valley I states:  "The parties to this Purchase Agreement consent to the exclusive venue in a court of competent jurisdiction in Waterloo,

14

Black Hawk County, Iowa." (Mossman Decl., Exh. E-1A.) This clause is not permissive. See Pullen Seeds and Soil v. Monsanto Co., 2007 WL 2071752, at *1 (D. Del. July 18, 2007) (holding that forum selection clause stating "[t]he parties consent to the sole and exclusive jurisdiction and venue" required dismissal of action). Defendants argue that this forum selection clause governs River Wind's action against all Defendants, even though only River Wind and Cedar Valley I were parties to the contract. (Mossman Mot. at 13:14-23.) A forum selection clause governs actions against non-parties to the contract if "[t]he alleged conduct of the non-parties is so closely related to the contractual relationship that the forum-selection clause applies to all defendants." Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514, fn. 5 (9th Cir. 1988). Plaintiffs allege that Defendants "entered into an agreement among themselves to work together, to perform various functions and services . . . [and] committed the overt acts [alleged] in furtherance of the conspiracy to induce Plaintiffs to invest in the [real estate packages]." (Compl. ¶¶ 54-55.) Therefore, Defendants have shown that the conduct of all Defendants as alleged in the Complaint was "closely related" to the conduct of Cedar Valley I. See Laurel Village Bakery, LLC v. Global Payments Direct, Inc., 2006 WL 2792431, at *6 (N.D. Cal. Sept. 25, 2006) (holding that forum selection clause was enforceable by non-party to contract where plaintiff alleged that non-party acted in concert with party to contract in order to defraud plaintiff). Accordingly, River Wind's claims against Defendants are dismissed under 28 U.S.C. § 1406(a).[9]

---

[9] Although § 1406(a) permits transfer or dismissal, River Wind's claims are dismissed because the forum selection clause provides River Wind the option of re-filing the action in Iowa, in either state or
(continued...)

### B. Motion to Transfer Venue For Convenience of the Parties

Defendants move to transfer this action to the District of Iowa under 28 U.S.C. § 1404(a), arguing that Iowa is a more convenient forum. (Mossman Mot. at 28:1-16.)

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Plaintiffs argue that since venue is proper in the Eastern District of California under 15 U.S.C. § 77aa, transfer under 28 U.S.C. § 1404(a) is not permissible. (Pls.' Opp'n to Mossman Mot. at 28:1-11.) However, "Section 78aa clearly does not 'prohibit the transferring of [an action] to another jurisdiction which is clearly a more convenient jurisdiction for litigating the dispute.'" Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 229 (D.N.J. 1996) (quoting Harris v. Am. Inv. Co., 333 F. Supp. 325, 327 (E.D. Pa. 1971)).

Generally, a plaintiff's choice of forum "should rarely be disturbed." Vigman, 764 F.2d at 1317. Further, a "[p]laintiff's choice of forum is to be given 'substantial deference' where the plaintiff has chosen his home forum." Bratton v. Schering-Plough Corp., 2007 WL 2023482, *4 (D. Ariz. July 12, 2007). Defendants argue

---

[9](...continued)
federal court, and leaves the filing decision to River Wind. See Dealers Ass'n v. Envtl. Sys. Testing, Inc., 211 F.R.D. 71, 86 (E.D.N.Y. 2002) (dismissing plaintiffs' claims under § 1406(a), rather than transferring the action, because the forum selection clauses at issue left "plaintiffs with the choice of filing in either the state or Federal courts" in the venue required by the clauses, and therefore "dismissal of the claims properly preserve[d] [this decision for plaintiffs]").

16

that Plaintiffs' choice of forum is not entitled to deference since only some Plaintiffs reside in the forum. (Mossman Reply at 20:10-28.) However, all Plaintiffs reside in the Eastern District of California or elsewhere in California.[10] (Compl. ¶¶ 1-4.) Defendants also argue that Plaintiffs' choice of forum is not entitled to deference because no events significant to Plaintiffs' claims took place in the forum. (Mossman Reply at 21:13-20.) However, Plaintiffs declare that certain acts forming the basis of their federal securities fraud claims took place in the Eastern District of California. (See Declaration of James Hall in Opp'n to Def.'s Mot. to Dismiss at ¶¶ 2, 4-5, 8-9.)

The convenience of the witnesses "is often the most important factor [in the § 1404(a) analysis]." A.J. Indus., Inc. v. U.S. Dist. Ct., 503 F.2d 384, 389 (9th Cir. 1974). Defendants argue that "the vast majority of witness[es], including tenants, banks, insurance companies, [and] appraisers" are located in Iowa. (Mossman Mot. at 28:14-16.) However, Defendants failed to state "who the witnesses are, where they are located, what their testimony will be and why such testimony is relevant or necessary." A.J. Indus., 503 F.2d at 389; see also Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294-95 (7th Cir. 1989) (affirming denial of motion to transfer because moving party's assertion that "key witnesses" were in another forum was a "vague generalization" and moving party did not

---

[10] Harpaul Nagra, Amritpal Nagra, James Hall, and Brenda Hall reside in the Eastern District of California. (Compl. ¶¶ 3-4.) Reuben Tolentino, Katherine Tolentino, Dean Baker, and Kara Baker live elsewhere in California. (Id. ¶¶ 1-2.) Only Sarah Crawford, the sole member of River Wind, resides outside of California, and River Wind's claims have been dismissed for improper venue. (Id. ¶ 7.)

"establish who (specifically) it planned to call or the materiality of that testimony").

Defendants argue that transfer of venue is warranted since the properties that Plaintiffs purchased are located in Iowa and "most likely a court would require dozens of site inspections by the trier of fact." (Mossman Mot. at 22:8-14.) But Plaintiffs counter that "[t]his is not a construction defect action. Rather, the issue is whether [D]efendants misrepresented the condition of the properties at the time [P]laintiffs invested in the enterprise." (Pls.' Opp'n to Mossman Mot. at 29 n.16.)

Defendants have not met their burden of making "a strong showing of inconvenience to warrant upsetting [Plaintiffs'] choice of forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). Therefore, Defendants' motion to transfer venue is denied.

## CONCLUSION

Plaintiffs' two federal claims are dismissed without prejudice under Rule 12(b)(6). Counts 6, 7 and 8 against Dudley, Investors Advantage, Cash Flow, Cedar Valley I, Cedar Valley II, Eagles Nest, and the Defendant Appraisers are dismissed without prejudice under Rule 12(b)(6). River Wind's claims are dismissed under 28 U.S.C. § 1406(a) for improper venue. Plaintiffs are granted

///
///
///
///
///
///
///

10 days leave from the date on which this order is filed to file an amended complaint in which the dismissed claims are amended.

IT IS SO ORDERED.

Dated:  December 13, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge